Requestor: Hon. Richard F. Corbisiero, Jr., Chairman NYS Racing and Wagering Board 400 Broome Street New York, N Y 10013
Written by: G. Oliver Koppell, Attorney General
You have asked several questions about the requirements, contained in the Racing, Pari-Mutuel Wagering and Breeding Law, that must be met by a regional off-track betting corporation seeking a license to simulcast horse races on which pari-mutuel betting is to be permitted. Section 1003 of the law provides that, before it may grant a simulcast license, the Racing and Wagering Board (the "Board") shall review and approve a plan of operation submitted by the applicant. Among the items required to be included in the plan is "the location of the facility and a written confirmation from appropriate local officials that the location of such facility and the number of patrons expected to occupy such facility are in compliance with all applicable local ordinances". Racing, Pari-Mutuel Wagering and Breeding Law § 1003(2)(f). The statute also provides that no change in a plan of operation may occur until an amendment to the plan is approved by the Board. Id., § 1003(4).
You have asked whether certain regulations promulgated by the Department of State are applicable to a simulcasting facility licensed by the Board. Those regulations provide:
 "A county or a city which participates in a regional off-track betting corporation established pursuant to article V of the Racing, Pari-Mutuel Wagering and Breeding Law shall be accountable for administration and enforcement of the Uniform Code [New York State Uniform Fire Prevention and Building Code] with respect to buildings, premises and equipment in the custody of, or activities related thereto undertaken by, such corporation, whenever such buildings, premises, equipment or activities are located or occur within the boundaries of the respective county or city."
19 NYCRR § 441.2(c). You also have asked whether the regulation vests exclusive fire and building code jurisdiction in the county or city where the property is located and whether any town zoning or health ordinances are applicable to a simulcast facility.
We conclude first that the Department of State's regulation by its terms clearly is applicable to simulcast facilities licensed by the Board and that the participating county or city where the building is located is responsible for enforcement of the State's Uniform Code. Executive Law § 381(1) makes local governments responsible for enforcing the Uniform Code, with exceptions that are not relevant here. See,
19 NYCRR § 441.1. The regulation at issue here is one such exception. It makes the particular county or city in which an OTB facility is located responsible for code enforcement. 19 NYCRR § 441.2(f).
Section 1003 has a field of operation that is separate from, and, therefore, consistent with the Department of State's regulation. Section 1003 requires an applicant to establish that the facility complies with "all applicable local ordinances" dealing with the location of the facility and the number of patrons. We believe this language includes local zoning regulations as well as applicable health and safety regulations such as a village, town or county sanitary code. Thus, in our view, town regulations that relate to location of the facility and numbers of patrons are applicable to a simulcast facility.
As you note, in a prior opinion we concluded that a town's planning and zoning boards had no jurisdiction over the location of facilities of a regional off-track betting corporation. 1976 Op Atty Gen (Inf) 288. That opinion, however, did not address the same questions you raise. It was written before section 1003 was added to the statute.
In Matter of County of Monroe, 72 N.Y.2d 338 (1988), the Court of Appeals adopted a balancing test for determining whether one public entity is subject to zoning regulation of another. Under the Court's test the encroaching governmental unit is, in the first instance, deemed to be subject to the zoning requirements of the host unit in the absence of legislative intent to the contrary. There is no evidence that the Legislature intended simulcast facilities to be exempt from local zoning regulations. To the contrary, the Legislature has stated in section 1003 that an applicant for a simulcast license must establish compliance with local regulations regarding the location of the proposed facility and the number of persons expected to occupy it. This reflects the Legislature's intent that the regional OTB's simulcast facility be subject to at least some local regulations.
We conclude that the Department of State's regulations regarding enforcement of the Uniform Code apply to simulcast facilities licensed pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 1003 and that such facilities are subject to local regulations relating to the location of the facilities and the number of patrons expected to occupy them.